UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
ALISHA CAEN,

                Plaintiff,

        -against-

OMAR MEDINA, WENDY'S OLD
FASHIONED HAMBURGERS OF NEW
YORK, INC.,

                Defendants.
----------------------------------------------------------X

MEMORANDUM AND ORDER

CV 06-3758

(Wexler, J.)

APPEARANCES:

    MARTIN J. COLEMAN, ESQ.
    Attorney for Plaintiff
    100 Crossways Park Drive West Suite 412
    Woodbury, New York 11797

    MUCH SHELIST
    BY: ANNE E. LARSON, ESQ.
    Attorneys for Defendant Wendy's Old Fashioned Hamburgers, Inc.
    191 North Wacker Drive
    Chicago, Illinois 60606

    RAYMOND NARDO, ESQ.
    Attorney for Defendant Omar Medina
    129 Third Street
    Mineola, New York 11501

WEXLER, District Judge

    This is an employment discrimination action, commenced pursuant to Title VII of the Civil Rights Act, 42 U.S.C. §2000e ("Title VII") and New York State law, by Plaintiff Alisha Caen ("Plaintiff"). Named as Defendants are Wendy's Old Fashioned Hamburgers, Inc. ("Wendy's") and Omar Medina ("Medina"). The facts forming the basis of this action arise from Plaintiff's employment at a Wendy's restaurant where Medina was one of Plaintiff's supervisors.

Presently before the court are the motions of Wendy's and Medina for summary judgment. For the reasons that follow the motions are granted.

## BACKGROUND

### I. Plaintiff's Employment and Her Interaction With Medina

Plaintiff began working at a Wendy's restaurant located in this district in August of 2004. At the time, Plaintiff was seventeen years old. Defendant Medina was the night crew manager. Shortly after beginning employment at Wendy's, Medina began, as described by Plaintiff, "putting the moves" on Plaintiff. While Plaintiff states that she was unsure as to how she felt about Medina's advances, certain facts are undisputed. It is clear that Plaintiff engaged in sexually suggestive banter with Medina and other co-workers. Further, it is undisputed that in November of 2004, Plaintiff agreed to date Medina and had sexual relations with him. Plaintiff's complaint sets forth her ambivalent feelings about her relationship with Medina and her regret in agreeing to date and have sex with him. Plaintiff states that she told Medina that she was unwilling to continue to date him and that she had reconciled with a previous boyfriend.

Plaintiff alleges that on December 5, 2004, Medina raped Plaintiff at work. Specifically, Plaintiff's complaint states that Medina forced her to perform oral sex on him in the Wendy's bathroom. Medina acknowledges the incident but states that it was consensual. Plaintiff states that after the December incident she asked the restaurant manager, Mark Steinberg ("Steinberg") to change her schedule so that she would not be required to work the night shift with Medina. Steinberg asked Plaintiff the reason for this request, but Plaintiff did not mention the alleged sexual assault. Nonetheless, for the next three to four months, Plaintiff's schedule was arranged so that she would not be working alone with Medina. During one week in January, however, when the schedule was arranged by an assistant manager, Plaintiff was again placed on the night

shift with Medina. Plaintiff alleges that Medina took the opportunity to "grope" and "abuse" her. A later change in the way in which schedules were arranged led to Plaintiff again working alone with Medina. Medina is alleged to have continued to make unwelcome advances, including grabbing Plaintiff's breasts. On one occasion, Steinberg saw Medina approach Plaintiff and asked Plaintiff if anything was wrong. Plaintiff said that nothing was wrong. On another occasion, Steinberg observed Medina rubbing Plaintiff's shoulders and asked her if she was comfortable with it. Plaintiff responded that she was "OK with that."

In May of 2005, Plaintiff quit her job at Wendy's. It was not until the day after she quit that she told Steinberg that Medina was sexually harassing her. Shortly thereafter, Wendy's commenced an investigation that resulted in Medina's termination for violation of Wendy's fraternization policy. After Medina's termination, Plaintiff was told that she could return to work at Wendy's, but she chose not to return.

II. The Complaint

Plaintiff's complaint sets forth a cause of action alleging a hostile work environment in violation of to Title VII. Plaintiff's second cause of action alleges common law assault and battery. The final cause of action alleges "negligence, recklessness and/or deliberate indifference."

III. The Motions for Summary Judgment

Defendants move separately for summary judgment. Wendy's seeks summary judgment on the ground that it had in place a policy to prevent and correct sexually harassing behavior and Plaintiff unreasonably failed to take advantage of that policy. See Burlington Indust., Inc. v. Ellerth, 524 U.S. 742 (1998) and Faragher v. City of Boca Raton, 524 U.S. 775 (1998). Medina seeks dismissal of the claim under Title VII on the ground that the statute does not

provide for individual liability. Dismissal of the negligence claim is sought on the ground that it is barred by the New York State Worker's Compensation Law. Finally, the assault and battery claims are sought to be dismissed as barred by the applicable one year statute of limitations.

## DISCUSSION

I. <u>Wendy's Motion</u>

A. <u>Legal Principles: Title VII Employer Liability for Hostile Environment</u>

A employee may claim a violation of Title VII based upon the allegation of a hostile working environment. To prevail on a such a claim a plaintiff must show that the harassment was "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." <u>Pronin v. Raffi Custom Photo Lab, Inc.</u>, 383 F. Supp.2d 628, 633 (S.D.N.Y. 2005), quoting, <u>Feingold v. New York</u>, 366 F.3d 138, 149 (2d Cir. 2004). Additionally, the victim must perceive the environment to be abusive. <u>Id</u>. The issue of whether a plaintiff's complaints amount to a hostile environment is to be decided by a totality of the circumstances and the fact finder is to consider factors such as the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 21, 23 (1993). If reasonable jurors could disagree as to the outcome of this question, the issue cannot be decided as a matter of law. <u>Patterson v. City of Oneida</u> 375 F.3d 206, 227 (2d Cir. 2004).

An employer may be liable, under Title VII, for the hostile environment created by Plaintiff's immediate supervisor on a theory of vicarious liability. <u>Mack v. Otis Elevator Co.</u>, 326 F.3d 116, 123 (2d Cir. 2003); <u>Schmidt v. State University of New York at Stony Brook</u>, 2006 WL 1307925 * 11 (E.DN.Y. 2006); <u>Brewster v. City of Poughkeepsie</u>, 447 F. Supp.2d 342,

352 (S.D.N.Y. 2006). Where such vicarious liability is sought to be imposed, however, an employer may assert, as an affirmative defense, that it had an anti-harassment policy in place and the plaintiff unreasonably failed to take advantage of that policy. See Burlington Indust., Inc. v. Ellerth, 524 U.S. 742 (1998) and Faragher v. City of Boca Raton, 524 U.S. 775 (1998).

To establish this defense, a defendant must first establish that it took no adverse employment action with respect to the plaintiff. Brewster, 447 F. Supp.2d at 353. Once this initial burden is established, the defendant must show: (1) that "it acted reasonably to prevent and correct promptly any sexually harassing behavior" and, (2) that plaintiff unreasonably failed to take advantage of "any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." Leopold v. Baccarat, Inc., 239 F.3d 243, 245 (2d Cir. 2001) (citations omitted); Brewster, 447 F. Supp.2d at 353.

After an employer satisfies the burden of showing that the plaintiff has failed to take advantage of a complaint procedure, the burden of production shifts to the plaintiff to show the reason why such procedures were not used. Leopold, 239 F.3d at 246; Schmidt, 2006 WL 1307925 *14. Where a plaintiff attributes the failure to act to the fear that a complaint would not be taken seriously, or to a fear of retaliation, the reluctance to complain must be based upon more than a mere subjective belief. Leopold, 239 F.3d at 246. Instead, evidence must be produced showing that the employer has failed to take prior complaints seriously and/or that others have suffered retaliation as a result of making complaints. Leopold, 239 F.3d at 246. A plaintiff may not defeat the employer's affirmative defense by the assertion of unsupported conclusory allegations. Clarke v. Mount Sinai Hospital, 2007 WL 2816198 *10 (E.D.N.Y. 2007); Breeding v. Cendant Corp., 2003 WL 1907971 *8 (S.D.N.Y. 2003). Ultimately, the failure of the plaintiff to make an adequate showing as to the reason for failing to take advantage of

complaint procedures may be relied upon by the employer in carrying the ultimate burden of persuasion. Leopold, 239 F.3d at 246.

Courts have granted dismissals to employers based upon the Faragher/Ellerth affirmative defense both on motions for summary judgment and motions for judgment as a matter of law. See, e.g., Clarke, 2007 WL 2816198 *10 (granting defense motion for summary judgment); Schmidt, 2006 WL 1307925 *15 (same); McPherson v. NYP Holdings, Inc., 2005 WL 2129172 *8 (E.D.N.Y. 2005), aff'd. mem., 227 Fed. Appx. 51 (2d Cir. 2007) (same); Brewster, 447 F. Supp.2d at 353 (Rule 50 post-trial motion granted reversing jury verdict finding liability).

B. Disposition of Wendy's Motion

The court's review of the evidence presented on this motion leads to the conclusion that Wendy's has established the Fargher/Ellerth affirmative defense and is therefore entitled to summary judgment dismissing the complaint.

At the outset, the court assumes that Plaintiff has properly set forth facts supporting her claim of a hostile working environment. Wendy's alleges, and Plaintiff concedes, that she suffered no adverse employment action. The questions before the court are: (1) whether Wendy's has established that it had an appropriate sexual harassment policy in place and, (2) that plaintiff unreasonably failed to take advantage of opportunities provided by that policy. Once this is established, the court considers whether Plaintiff has shown a reason for failure to take advantage of the policy. Ultimately, the burden of proving the affirmative defense lies with the Defendant.

As an initial matter, the court holds that Wendy's has established the existence of an anti-sexual harassment policy sufficient to satisfy the first prong of their affirmative defense. Wendy's disseminates its policy and complaint procedure to all new employees as part of a three

and one half hour orientation. Employees are also provided with an employee handbook outlining Wendy's policy. In addition to the policies outlined in the employee handbook, Wendy's has what it refers to as a "speak out" policy, encouraging employees to talk to managers and local human resources representatives if they have any problems in the workplace. This policy is set forth in a "speak out" poster in the workplace. That poster includes the name and telephone number of the human resources representative to whom complaints can be made. Wendy's has also established an "Ethics Hotline" that employees can call to make anonymous complaints about workplace harassment. The existence of the foregoing policies make it clear to the court that Wendy's has satisfied the first prong of its Faragher/Ellerth defense.

The court further holds that Plaintiff unreasonably failed to take advantage of opportunities provided by that policy. The court notes that the relationship between Medina and Plaintiff was, at least at the outset, consensual. Although Plaintiff states that she regretted her decision to date Medina, it is clear that she agreed to have a relationship with him. While Plaintiff may have wished to break off that relationship, and Medina may have begun harassing her at the workplace, Plaintiff did nothing to complain about Medina to Wendy's management. Even questions prompted by the observation of Medina's inappropriate conduct resulted in no complaint. Thus, when Steinberg, asked Plaintiff if Medina made her uncomfortable, Plaintiff responded that she was "OK" with Medina's behavior. Under these circumstances, it is clear that Plaintiff failed unreasonably to take advantage of the policies put in place by Wendy's.

Finally, the court considers whether Plaintiff has satisfied her burden of production in coming forward with a reason why she failed to take advantage of Wendy's anti-harassment policy. It is clear that she has not. When asked why she never took advantage of Wendy's procedures, Plaintiff responded that she thought that she could handle Medina's behavior on her

own. She states that she "did not want to be involved" with complaining of Medina's harassment. She points to neither evidence of the failure of Wendy's to address adequately complaints of harassment nor to instances of retaliation following the making of such complaint. Indeed, the evidence is to the contrary. As soon as Wendy's was made aware of Medina's behavior, an investigation was commenced and he was terminated. Although Plaintiff was offered her job back, she refused.

In light of the foregoing, the court holds that Wendy's has established, as a matter of law, the Faragher/Ellerth affirmative defense. It is therefore entitled to summary judgment dismissing Plaintiff's Title VII claim. It is unclear whether Plaintiff's complaint sets forth any state law claims against Wendy's. The only claim that Plaintiff's summary judgment papers seek to sustain as against Wendy's, however, is the Title VII claim. In light of this, and the fact that Plaintiff specifically seeks to sustain a state law claim against Defendant Medina, it appears to the Court that Plaintiff has abandoned any state law claim that may have been alleged against Wendy's.

II.     Medina's Motion

Plaintiff concedes that there is no individual liability under Title VII and the court therefore grants the motion to dismiss that claim. Plaintiff also concedes Medina's argument as to dismissal of the negligence claim and that claim is therefore also dismissed. Finally, Plaintiff admits that all assault and battery claims, other than the incident of December 5, 2004, are barred by the applicable one year statute of limitations. Accordingly, the only remaining issue is the viability of a claim arising our of the December 5, 2004 incident.

Plaintiff alleges that the December 5, 2004 incident amounts to an assault that could be charged as sexual assault in the first degree under the New York Penal Law. Under a recently

enacted New York law, such incidents are subject to a five year statute of limitations. See N.Y.C.P.L.R §213-c. In Plaintiff's view, there is an issue of fact as to whether her allegations falls within the statutory definition of criminal conduct that is encompassed by CPLR §213-c. it is therefore argued that this last remaining state law cause of action may not be dismissed.

Where, as here, the court has dismissed before trial the only basis for Federal jurisdiction, the court may decline to exercise jurisdiction over any remaining state claims. United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966);. e.g., Baylis v. Marriot Corp., 843 F.2d 658, 665 (2d Cir. 1988); Weathers v. Millbrook Central Sch. Dist., 2007 WL 1290144 *2 (S.D.N.Y. 2007); see 28 U.S.C. §1367(c)(3). Dismissal is warranted on this ground. Additionally, dismissal is especially appropriate here in light of the novel issue of state law raised by Plaintiff's theory, which applies a section of the CPLR which was not enacted until 2006. See 28 U.S.C. §1367(c)(1) (district court may decline to exercise jurisdiction where, inter alia, claim raises novel issue of state law).

## CONCLUSION

The motions of Defendants for summary judgment are granted. The court declines to exercise jurisdiction over the sole remaining state claim against Defendant Medina. Accordingly, the complaint is dismissed in its entirety. The Clerk of the Court is directed to terminate the motions and to close the file in this matter.

SO ORDERED.

LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Dated: Central Islip, New York
March 7 , 2008